## McCARTHY v. AMERICAN EASTERN CORPORATION.

### No. 283 of 1947.

United States District Court
E. D. Pennsylvania.

Aug. 13, 1948.

Freedman, Landy & Lorry, of Philadelphia, Pa., for libellant.

Krusen, Evans & Shaw, of Philadelphia, Pa., for respondent.

FOLLMER, District Judge.

### Findings of Fact.

1. On June 16, 1947, libellant was 30 years of age, a citizen of Canada, and a seaman in the United States Merchant Marine. His academic education was limited to grade school and one year high school and his work record thereafter was one of manual labor.

2. On June 16, 1947, the respondent, a New York corporation, possessed, owned, operated and controlled the Motor Vessel "Gadsden" in foreign commerce.

3. On June 16, 1947, libellant was in the employ of respondent as a member of the crew of the Motor Vessel "Gadsden" in the capacity of wiper, at the rate of $185.50 per month, base wages, plus overtime and maintenance.

4. On June 16, 1947, at or about 2:30 o'clock P.M., while the vessel was under navigation, libellant was proceeding from the main deck level to the 'tween deck of

No. 5 hold, pursuant to orders. By reason of a gap of 6-8 feet in the ladder, provided for ascent and descent, libellant in making his descent was caused to fall about 20-25 feet through the open hatch of the 'tween decks to the bottom of the ship, landing on his back on the hard bottom which had sweepings of sand on it.

5. Libellant was removed from the hold to his quarters where he remained until the ship reached the port of Montreal on June 18, 1947. He was then taken to St. Luke Hospital in Montreal where he remained until June 23, 1947, during which period it was not ascertained that he had sustained fractures of his vertebrae.

6. Libellant received wages from the "Gadsden" from May 13 to June 26, 1947, inclusive.

7. The attending physician at St. Luke Hospital who examined libellant diagnosed his condition as Lumbalgia.

8. Libellant was retained as an in-patient at St. Luke Hospital until June 23, 1947, when he was released to the Hospital's Out-patient Department and told to report to it on July 7, 1947.

9. On July 11, 1947, libellant was given a "Sailor's Discharge" by St. Luke Hospital which stated that he should be fit for duty by July 28, 1947.

10. After July 7, 1947, libellant never applied for any medical treatment on account of his back injury of June 16, 1947, either to St. Luke Hospital or to any other facility or physician.

11. At all times while libellant was at Montreal following his discharge from St. Luke Hospital, he lived at the home of his parents and received bed and board from them.

12. Libellant contracted infantile paralysis during his childhood which resulted in a degree of functional impairment to the muscles of his left side.

13. Libellant has a condition of scoliosis or lateral spinal curvature which condition predated his accident and stemmed from a 5/8" difference in his leg lengths.

14. Libellant has a developmental anomaly in the structure of his back whereby his lowermost rib on either side is not attached to the twelfth thoracic vertebra, which condition probably existed from birth.

15. Subsequent to the accident on June 16, 1947, libellant was employed as a maintenance man for Dalglish, Ltd., of Montreal, Canada, from September 15, 1947, to January 21, 1948. He was physically incapable of carrying out his duties, was unable to do heavy lifting, had to be supplied with a helper, and he favored his back. For these reasons, Mr. T. R. Fleming, Superintendent of Dalglish, Ltd., decided to discharge libellant.

16. Libellant next entered the employ of T. Eaton Co., Ltd., of Montreal, Canada, as a fireman, remaining in that job between February 10, 1948, and March 15, 1948, during which he was obliged to shovel large quantities of coal into a hopper over 4' high. He suffered pains in trying to do the work. He could not stoop and had difficulty in moving when he bent over. He lost this job because he could not do the work.

17. Libellant's condition is permanent and he cannot do any work involving stooping, bending, or heavy lifting. Efforts to engage in such manual work would increase the strain on the already weakened back and probably increase his disability.

18. Libellant had no trouble with his back prior to the accident, and suffered no pain; he was capable of performing all of his duties in the various laboring jobs he had. The official log of the Motor Vessel "Gadsden" reflects that the Captain rated plaintiff as "very good" for ability and conduct.

19. Libellant's injuries were sustained in the service of the vessel and not by reason of his own misconduct.

20. The total time elapsed between the date of libellant's discharge from the vessel to the date of the trial, viz., from June 26, 1947, to April 16, 1948, is 295 days, from which should be deducted for maintenance calculations the period of 128 days during which he worked for Dalglish, Ltd. (September 15, 1947, to January 21, 1948),

and 34 days covering his Eaton Co., Ltd., employment (February 10, to March 15, 1948), totalling a deduction of 162 days, leaving a balance of 133 days.

21. The libellant instituted a civil action against this same respondent, American Eastern Corporation, and recovered a verdict for damages in the sum of $22,500.

22. During the course of the trial of that case the libellant proved as a part of his damages not only the monetary wage he received, but also the fact that room and board were furnished in addition to his monetary wage.

23. The libellant has recovered damages in an amount adequate to cover not only his loss of monetary earnings but also any loss he might have had by reason of being deprived of his board and lodging in his occupation as a seaman.

## Conclusions of Law.

1. This Court has jurisdiction over the subject matter and the parties.

2. Libellant was injured on June 15, 1947, while in the service of the Motor Vessel "Gadsden."

3. Libellant has expended no money for medical treatment and is not entitled to any award for "cure."

4. The jury having been instructed, "You will determine such amount (damages) on the basis of any pecuniary loss you may find he has already ·sustained * * · *, such as loss of earning power up to the present time · * * *," and having returned a very substantial verdict for the libellant, the libellant is not entitled to a further recovery for maintenance.

5. In the light of the instructions in the tort action on the matter of damages, and the consequent verdict therein, it is my opinion that the matter litigated in the former suit is determinative of the matter in controversy in this suit. Runyan v. Great Lakes Dredge & Dock Co., 6 Cir., 141 F.2d 396.

6. To permit a recovery here for maintenance would, in my judgment, be awarding a duplication of compensatory damages. Muise v. Abbott, 1 Cir., 160 F.2d 590.

7. Libellant is not entitled to maintenance and cure.